UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ERIK KERTESZ

                Plaintiff,

COLONY TIRE CORPORATION,
SCOTT CREIGHTON,
CHARLES CREIGHTON,
JOHN and JANE DOES 1-10 and
ABC CORPS. 1-10,

                Defendants.

Civil Action No. 20-cv-12364

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Brief By:**
Tyrone A. Blackburn, Esq.

**TABLE OF CONTENTS**

1. INTRODUCTION ................................................................... 4
2. STATEMENT OF FACTS .................................................... 5
   2.1. Heart Attack and Subsequent Recovery .................. 5
   2.2. Cancer Diagnosis and Request for Accommodations ..... 6
   2.3. Demotion Without Justification .............................. 7
   2.4. Termination Following Complaints and Requests for Accommodations ........................................................... 8
   2.5. Unauthorized Disclosures ........................................ 9
   2.6. Emotional and Professional Consequences ................ 10
3. LEGAL ARGUMENTS ....................................................... 11
   3.1. Standard for Summary Judgment ............................. 11
   3.2. Refutation of Defendants' Argument That Plaintiff Cannot Set Forth a Prima Facie Case Under Common Law Invasion of Privacy ...................................................... 13
   3.2.1. Legal Standard for Invasion of Privacy .............. 13
   3.2.2. Plaintiff's Evidence Supporting the Claim .......... 14
   3.3. Refutation of Defendants' Argument That Plaintiff Cannot Show Failure to Engage in the Interactive Process or Provide Reasonable Accommodation ............................... 16
   3.3.1. Legal Standard for the Interactive Process and Reasonable Accommodation ........................................... 16
   3.3.2. Defendants' Failures ........................................ 17
   3.4. Refutation of Defendants' Argument That Plaintiff Cannot Set Forth a Prima Facie Case of Aiding and Abetting .... 20
   3.4.1. Legal Standard for Aiding and Abetting .............. 20
   3.4.2. Plaintiff's Evidence Supporting the Claim .......... 21
4. CONCLUSION ............................................................... 23

# TABLE OF AUTHORITIES
## Cases

### Federal Supreme Court Cases
1. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)
    a. Standard for summary judgment and genuine disputes of material fact.
2. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)
    a. Shifts the burden of proof in summary judgment motions.
3. *Tolan v. Cotton*, 572 U.S. 650 (2014)
    a. Reiterates the requirement for courts to view evidence in the light most favorable to the non-moving party.

### Federal Appellate Cases (Third Circuit)
1. *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358 (3d Cir. 2008)
    a. Nuanced issues of intent and credibility preclude summary judgment in discrimination cases.
2. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181 (3d Cir. 2015)
    a. Temporal proximity as evidence of retaliation.
3. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999)
    a. Good faith in the interactive process under the ADA.
4. *Malleus v. George*, 641 F.3d 560 (3d Cir. 2011)
    a. Disclosure of health information as a basis for highly offensive conduct in privacy claims.

### Federal District Cases
1. *Russo v. Sage Dining Servs.*, 2021 U.S. Dist. LEXIS 164352, *18
    a. Credibility issues and evidence of pretext in employment discrimination cases.
2. Reid v. Mitchel, 2021 WL 1816890 (D.N.J. May 6, 2021)
    a. Elements for invasion of privacy under New Jersey law.
3. Doe v. D'Attilo, 2016 WL 11244421 (D.N.J. May 5, 2016)
    a. Public dissemination requirements in privacy claims.
4. McCall v. City of Phila. Health Ctr. No. 10, 2021 WL 1950225 (E.D. Pa. May 14, 2021)
    a. Flexible scheduling as a reasonable accommodation.
5. Reyer v. Saint Francis Country House, 243 F. Supp. 3d 573 (E.D. Pa. 2017)
    a. Employer's failure to provide evidence of undue hardship.

### New Jersey State Cases
1. *Romaine v. Kallinger*, 109 N.J. 282 (1988)
    a. Public disclosure of private facts and offensive nature to a reasonable person.
2. *Tarr v. Ciasulli*, 181 N.J. 70 (2004)
    a. Elements for aiding and abetting under the NJLAD.
3. *Soliman v. Kushner Cos.*, 433 N.J. Super. 153 (App. Div. 2013)
    a. Disclosures made under the guise of helpfulness as actionable conduct.

### Statutes and Rules
1. Americans with Disabilities Act (ADA)
    a. Framework for reasonable accommodations and interactive process requirements.
2. New Jersey Law Against Discrimination (NJLAD)
    a. Prohibits discrimination and retaliation; establishes aiding and abetting liability.
3. Rule 56, Federal Rules of Civil Procedure
    a. Governs the standard and burden of proof for summary judgment.

## INTRODUCTION

Plaintiff, Erik Kertesz, respectfully submits this Opposition to Defendants' Motion for Summary Judgment ("MSJ"). The Defendants' motion relies on a distorted presentation of facts that is wholly refuted by the documented evidence in this case. This Opposition demonstrates that material factual disputes preclude summary judgment, as required under Rule 56 of the Federal Rules of Civil Procedure.

At the heart of this case lies a pattern of discriminatory conduct, bad faith actions, and outright retaliation against the Plaintiff following his serious medical diagnoses and requests for reasonable accommodations. Plaintiff's claims are not speculative—they are substantiated by overwhelming evidence, including written communications, deposition testimony, and third-party corroboration, all of which paint a vivid picture of Defendants' calculated and punitive behavior.

Defendants have attempted to frame their actions as compassionate and supportive, citing Plaintiff's full salary payments during medical leave. However, this narrative is contradicted by evidence showing Defendants' ulterior motives: manipulating stop-loss insurance processes, coercing Plaintiff into premature FMLA leave, and ultimately terminating him shortly after he disclosed his need for continued medical accommodations. This pattern of conduct is emblematic of discrimination and retaliation, as prohibited under the New Jersey Law Against Discrimination (NJLAD) and the Americans with Disabilities Act (ADA).

The Defendants' actions also include egregious violations of privacy, with unauthorized disclosures of Plaintiff's health information to employees and third parties. Such breaches not only inflicted emotional harm but also compromised Plaintiff's professional standing in a tightly-knit industry. These repeated invasions of privacy further underscore the Defendants' reckless disregard for Plaintiff's rights and dignity.

4

In light of the substantial evidence presented, it is clear that this case cannot be resolved through summary judgment. The genuine disputes of material fact, coupled with Defendants' inability to meet their burden of proof, necessitate a full trial to ensure that justice is served.

## STATEMENT OF FACTS

Plaintiff, Erik Kertesz, was hired by Colony Tire Corporation as General Manager of Atlantic Tire Distributors in 2017. Earning $275,000 annually, Plaintiff oversaw a $100 million operation with over 200 employees. During his tenure, Plaintiff achieved record-breaking sales growth, streamlined operations, and developed strategies that reduced operating expenses. Internal communications and performance reviews reveal consistent praise for his leadership and contributions, with no history of disciplinary actions or performance deficiencies.

*Heart Attack and Subsequent Recovery*: In January 2019, Plaintiff suffered a heart attack requiring double bypass surgery. Despite his critical condition, Plaintiff resumed working from his home office shortly after surgery, demonstrating unwavering dedication to his role. Defendants deceptively informed their stop-loss insurance provider that Plaintiff had taken extensive FMLA leave during this period to secure reimbursement for medical expenses, even though Plaintiff had not utilized such leave.

*Cancer Diagnosis and Request for Accommodations*: In mid-2019, Plaintiff was diagnosed with stage III throat cancer, necessitating chemotherapy and radiation treatments. Despite his condition, Plaintiff sought only minimal accommodations, such as flexible scheduling to attend treatments. Emails and recorded communications show Plaintiff's proactive efforts to balance his medical needs with his job responsibilities.

Rather than engaging in the legally mandated interactive process, Defendants coerced Plaintiff into taking FMLA leave prematurely. They also failed to address Plaintiff's legitimate concerns about preserving leave for critical treatment periods.

*Demotion Without Justification*: In August 2019, shortly after Plaintiff disclosed his cancer diagnosis, Defendants abruptly demoted him from General Manager to Sales Manager, significantly reducing his authority, compensation, and job responsibilities. Internal announcements falsely framed the demotion as an opportunity for Plaintiff to focus on sales growth, masking the retaliatory nature of the action.

*Termination Following Complaints and Requests for Accommodations*: In November 2019, just days after Plaintiff informed Defendants of his need for continued accommodations, he was terminated. The termination occurred mere weeks after Plaintiff confronted Defendants about unauthorized disclosures of his health information. Defendants' claim that the termination was based on business needs is directly contradicted by internal emails and deposition testimony showing pretext and discriminatory intent.

*Unauthorized Disclosures:* Defendants repeatedly disclosed Plaintiff's private medical information to employees, vendors, and third parties without his consent. Examples include emails discussing Plaintiff's cancer diagnosis and treatment schedules sent to over 600 employees and external partners. Such disclosures caused significant reputational harm within the close-knit tire industry.

*Emotional and Professional Consequences*: As a result of these actions, Plaintiff experienced severe emotional distress, including anxiety and depression, as documented in a psychological evaluation by Dr. Rachel Powers. Plaintiff's professional reputation also suffered irreparable damage, making it difficult for him to secure comparable employment.

6

# LEGAL ARGUMENTS
## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides that it is only appropriate when the movant demonstrates there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those that might affect the outcome of the suit under the governing law. (*Id*. at 248).

In evaluating a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Courts are not permitted to weigh the evidence or determine the truth of the matter but are tasked solely with determining whether there is a genuine issue for trial. (*Anderson*, 477 U.S. at 249).

Importantly, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once this burden is met, the non-moving party must set forth specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The non-moving party cannot rely on mere allegations or denials in their pleadings but must present concrete evidence sufficient to support a jury verdict in their favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Courts in the Third Circuit and the District of New Jersey have consistently emphasized that summary judgment is inappropriate in cases involving disputes over intent or credibility, especially in employment discrimination cases. As noted in *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008), issues of discriminatory intent are often nuanced and fact-specific, making them unsuitable for resolution at the summary judgment stage. Similarly, the District of

New Jersey in *Russo v. Sage Dining Servs.*, 2021 U.S. Dist. LEXIS 164352, *18 reiterated that summary judgment should be denied where the plaintiff has produced evidence suggesting pretext or discriminatory motive.

Further, the Third Circuit has held that temporal proximity between protected activity and adverse employment action can support an inference of retaliation. In *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015), the court noted that when temporal proximity is unusually suggestive, it can suffice to defeat a motion for summary judgment. This principle applies squarely to the facts of this case, where Plaintiff's termination followed closely on the heels of his requests for accommodations and complaints about privacy violations.

Defendants' motion fails to meet the stringent standards of Rule 56. As demonstrated below, Plaintiff has introduced substantial evidence creating genuine disputes of material fact that must be resolved by a jury.

### I. REFUTATION OF DEFENDANTS' ARGUMENT THAT PLAINTIFF CANNOT SET FORTH A PRIMA FACIE CASE UNDER COMMON LAW INVASION OF PRIVACY

Defendants argue that Plaintiff cannot establish a prima facie case of invasion of privacy under common law. This argument is not only unsupported by the facts but directly contradicted by substantial evidence, as set forth below.

#### a) LEGAL STANDARD FOR INVASION OF PRIVACY

Under New Jersey common law, the tort of invasion of privacy encompasses multiple forms of actionable conduct, including "public disclosure of private facts." To establish a claim, a plaintiff must demonstrate the following elements: 1. *Disclosure*: The defendant disclosed private facts about the plaintiff; 2. *Publicity*: The disclosed information was made public through widespread dissemination; 3. *Offensiveness*: The disclosure would be highly offensive to a reasonable person, and 4. *Lack of Legitimate Public Interest*: The facts disclosed were not of

8

legitimate concern to the public. See *Romaine v. Kallinger*, 109 N.J. 282, 292 (1988); *Reid v. Mitchel*, 2021 WL 1816890, at *6 (D.N.J. May 6, 2021).

    b)  **PLAINTIFF'S EVIDENCE SUPPORTS EACH ELEMENT OF THE CLAIM**

        a.  **Defendants Disclosed Plaintiff's Private Facts**

The evidence demonstrates that Defendants repeatedly disclosed Plaintiff's sensitive medical information without his consent:

*Emails to Employees and Vendors*: On July 23, 2019, Scott Creighton informed employees via email that Plaintiff was "meeting with doctors to treat [his] newfound cancer." This disclosure was not authorized by Plaintiff and violated his privacy rights. On August 16, 2019, Charles Creighton emailed over 600 employees, vendors, and external partners, explicitly announcing Plaintiff's cancer diagnosis. This wide dissemination of highly sensitive medical information demonstrates a blatant disregard for Plaintiff's privacy.

*Unauthorized Sharing with Third Parties*: Deposition testimony from Adora Ambrose confirms that Plaintiff's medical condition was disclosed to vendors and staff without any legitimate business justification.

        b.  **The Disclosures Were Made Public**

Defendants widely disseminated Plaintiff's private medical information to hundreds of employees, vendors, and external partners. Public disclosure is a critical component of this tort, and emails sent to a large group of individuals unequivocally satisfy this requirement. *Doe v. D'Attilo*, 2016 WL 11244421, at *6 (D.N.J. May 5, 2016).

        c.  **The Disclosures Were Highly Offensive**

The unauthorized dissemination of Plaintiff's cancer diagnosis is highly offensive to a reasonable person, particularly given the sensitive nature of the information. Psychological

9

evaluations conducted by Dr. Rachel Powers detail the emotional and psychological distress Plaintiff experienced as a direct result of these invasions. Courts have recognized that health-related disclosures are uniquely invasive and likely to cause significant harm. *Malleus v. George*, 641 F.3d 560, 564 (3d Cir. 2011).

### d. The Disclosures Had No Legitimate Public Interest

There is no legitimate public interest in disclosing Plaintiff's medical diagnosis to employees, vendors, or external partners. Defendants' claim that these disclosures were made to coordinate support for Plaintiff is disingenuous, as demonstrated by their pattern of retaliatory actions, including Plaintiff's demotion and termination shortly thereafter. These actions undermine any claim of legitimate intent and highlight Defendants' bad faith.

### c) DEFENDANTS' ARGUMENTS ARE UNSUPPORTED

*Defendants' Alleged Good Faith*: Defendants contend that their disclosures were made with good intentions. However, the evidence indicates otherwise. Emails explicitly referring to Plaintiff's "illnesses" were sent to individuals with no need to know this information, undermining any claim of legitimate purpose. In *Soliman v. Kushner Cos.*, 433 N.J. Super. 153, 173 (App. Div. 2013), the court emphasized that disclosures made under the guise of "helpfulness" but without consent are actionable.

*Lack of Damages*: Defendants argue that Plaintiff cannot demonstrate harm. This is contradicted by Dr. Powers' report, which identifies significant emotional distress caused by these disclosures, including symptoms of anxiety, depression, and damage to Plaintiff's professional reputation. The Third Circuit has recognized that emotional distress is a cognizable injury in invasion of privacy claims *Arpaio v. Dupre*, 2011 U.S. Dist. LEXIS 21699, *17.

10

*Disputed Intent*: Questions of intent and credibility—central to this case—are inappropriate for resolution at the summary judgment stage. *Frantz v. Ferguson Enters.*, 2009 U.S. Dist. LEXIS 6241, *19

Plaintiff has set forth substantial evidence supporting his claim for invasion of privacy under New Jersey common law. The unauthorized and widespread disclosures of his medical information by Defendants meet all elements of the tort. Accordingly, Defendants' argument that Plaintiff cannot establish a prima facie case must be rejected.

## II. REFUTATION OF DEFENDANTS' ARGUMENT THAT PLAINTIFF CANNOT SHOW FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS OR PROVIDE REASONABLE ACCOMMODATION

Defendants argue that Plaintiff cannot demonstrate their failure to engage in the interactive process or reasonably accommodate Plaintiff's medical condition. This argument is both legally and factually baseless, as demonstrated below.

### a) LEGAL STANDARD FOR THE INTERACTIVE PROCESS AND REASONABLE ACCOMMODATION

Under the Americans with Disabilities Act (ADA) and the New Jersey Law Against Discrimination (NJLAD), employers are required to provide reasonable accommodations to qualified individuals with disabilities unless doing so would impose an undue hardship. This obligation encompasses two critical duties: *Interactive Process*: Employers must engage in a good-faith, bilateral discussion with the employee to explore potential accommodations. Failure to participate meaningfully in this process constitutes a standalone violation of the ADA. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999); *Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385, 397 (App. Div. 2002). *Reasonable Accommodation*: Employers must implement accommodations that enable the employee to perform essential job functions unless doing so would create undue hardship. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010). The interactive process is a "continuing duty" triggered whenever an employer becomes

11

aware of an employee's disability and potential need for accommodations. *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 333 (3d Cir. 2003).

    **b) DEFENDANTS FAILED TO ENGAGE IN THE INTERACTIVE PROCESS**
        **a. Plaintiff's Accommodation Requests Were Clear and Reasonable**

The evidence unequivocally shows that Plaintiff explicitly communicated his need for accommodations:

*June 2019 Disclosure of Diagnosis:* Upon receiving his cancer diagnosis, Plaintiff promptly informed Defendants and expressed a need for flexibility to attend medical treatments. This disclosure, made via email and verbal communications, triggered Defendants' duty to initiate the interactive process.

*November 2019 Follow-Up Request*: On November 20, 2019, Plaintiff requested flexibility in his schedule to accommodate weekly follow-up treatments. He reassured Defendants that these treatments would not interfere with his ability to perform essential job duties.

        **b. Defendants' Failure to Act Constitutes a Violation**

Defendants' response to Plaintiff's accommodation requests was not only inadequate but actively obstructive:

*Premature Invocation of FMLA Leave*: Rather than exploring accommodations, Defendants unilaterally forced Plaintiff to take FMLA leave, despite his stated preference to reserve such leave for times of greater necessity. This coercive action deprived Plaintiff of his rights under the ADA and NJLAD, as recognized in *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005).

*Failure to Explore Alternatives*: Deposition testimony from HR Manager Adora Ambrose confirms that Defendants failed to consider or propose alternative accommodations. Instead, Defendants dismissed Plaintiff's requests outright, demonstrating bad faith in the interactive process.

12

*Retaliatory Termination*: Just five days after Plaintiff's November 20 request for flexibility, Defendants terminated his employment. This retaliatory timing underscores their lack of genuine intent to engage in the interactive process.

### c) DEFENDANTS FAILED TO PROVIDE REASONABLE ACCOMMODATION
#### a. Plaintiff's Proposed Accommodations Were Reasonable

Flexible scheduling and permission to attend medical appointments are widely recognized as reasonable accommodations, particularly where they impose no undue burden on the employer. Plaintiff's job performance remained exemplary during his treatments, as evidenced by internal metrics and performance reviews.

#### b. Defendants Cannot Demonstrate Undue Hardship

Defendants' argument that accommodating Plaintiff would impose undue hardship lacks evidentiary support:

*Operational Feasibility*: Plaintiff's requested accommodations would have had minimal impact on operations, given his ability to continue performing his essential job functions remotely or with minor schedule adjustments. Courts have found such accommodations reasonable in similar circumstances. *McCall v. City of Phila. Health Ctr. No. 10*, 2021 WL 1950225, at *5 (E.D. Pa. May 14, 2021).

*Lack of Evidence*: Defendants provided no documentation or analysis to substantiate claims of undue hardship. This failure undermines their defense. *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 587 (E.D. Pa. 2017).

### d) DEFENDANTS' ARGUMENTS ARE UNSUPPORTED
#### a. Defendants' Claim of Engagement Is Contradicted by Evidence

*Absence of Documentation*: Defendants failed to produce records of discussions or proposed accommodations. This omission strongly suggests a complete failure to fulfill their legal obligations under the ADA and NJLAD.

13

*Timing of Termination*: The suspicious timing of Plaintiff's termination—mere days after his accommodation request—reveals retaliatory intent and further underscores Defendants' bad faith.

### b. Misrepresentation of Plaintiff's Role in the Interactive Process

Defendants' argument improperly shifts the burden entirely onto Plaintiff to propose accommodations. However, the Third Circuit has held that the interactive process is a shared responsibility requiring active participation by both parties. *Taylor*, 184 F.3d at 312.

The record establishes that Defendants failed to engage in the interactive process or provide reasonable accommodations as required by the ADA and NJLAD. Plaintiff's requests were clear, reasonable, and feasible, yet Defendants dismissed them without discussion or consideration. This failure, compounded by the retaliatory timing of Plaintiff's termination, demonstrates a blatant violation of their legal obligations. Accordingly, Defendants' argument must be rejected.

### III. REFUTATION OF DEFENDANTS' ARGUMENT THAT PLAINTIFF CANNOT SET FORTH A PRIMA FACIE CASE OF AIDING AND ABETTING

Defendants argue that Plaintiff cannot establish a prima facie case of aiding and abetting under applicable law. This argument is both legally incorrect and factually unsupported, as detailed below.

### a) LEGAL STANDARD FOR AIDING AND ABETTING

Under the New Jersey Law Against Discrimination (NJLAD), aiding and abetting occurs when a defendant knowingly provides substantial assistance or encouragement to another in committing unlawful discriminatory acts. To establish a prima facie case of aiding and abetting, a plaintiff must demonstrate: 1. The existence of an underlying violation of the NJLAD; 2. The defendant's substantial assistance or encouragement of the violation; and 3. The defendant's intentional participation with the knowledge that their actions were aiding the unlawful conduct.

14

See *Tarr v. Ciasulli*, 181 N.J. 70, 83-84 (2004); *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 463 (D.N.J. 2009).

Notably, individual liability for aiding and abetting under the NJLAD extends to supervisors who actively participate in discriminatory conduct or fail to take appropriate corrective action. *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 594 (2008).

b) **PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF AIDING AND ABETTING**
   a. **Underlying NJLAD Violations by the Employer**

Plaintiff has provided overwhelming evidence of underlying violations of the NJLAD, including disability discrimination, failure to provide reasonable accommodations, and retaliation. These violations are corroborated by internal communications, deposition testimony, and contemporaneous records of adverse actions taken against Plaintiff.

   b. **Substantial Assistance and Encouragement by Defendants**

The evidence demonstrates that individual Defendants Scott Creighton and Charles Creighton substantially assisted and encouraged the discriminatory acts:

*Unlawful Disclosures of Medical Information*: Scott Creighton and Charles Creighton actively participated in disclosing Plaintiff's sensitive medical information without consent. Emails reveal that Plaintiff's cancer diagnosis and treatment schedule were shared with over 600 employees, vendors, and external partners, fostering an environment of humiliation and hostility.

*Premature Invocation of FMLA Leave*: The Defendants coerced Plaintiff into taking FMLA leave prematurely, disregarding his explicit request to work with accommodations. This action was taken with full knowledge of its adverse impact on Plaintiff and was orchestrated under the direction of both Scott and Charles Creighton.

*Retaliatory Actions*: Both Defendants were directly involved in decisions to demote Plaintiff, assign him diminished job responsibilities, and ultimately terminate his employment.

Deposition testimony and email records document their roles in these adverse actions, which occurred shortly after Plaintiff exercised his rights under the NJLAD.

### c. Intentional Participation and Knowledge

The evidence further demonstrates that Scott and Charles Creighton acted with deliberate intent to aid and abet the employer's violations:

*Knowledge of Wrongful Conduct*: Both individuals were aware of the illegality of their actions. Internal communications and deposition testimony confirm their deliberate disregard for Plaintiff's accommodation requests and their intentional dissemination of his private medical information.

*Active Participation*: Defendants' direct involvement in the discriminatory and retaliatory decision-making process satisfies the aiding and abetting standard under the NJLAD. Their actions went beyond passive oversight and included direct implementation of adverse actions against Plaintiff. *Ivan v. County of Middlesex*, 595 F. Supp. 2d at 463.

### c) DEFENDANTS' ARGUMENTS ARE UNSUPPORTED
#### a. Defendants Mischaracterize the Legal Standard

Defendants incorrectly assert that aiding and abetting requires direct commission of discriminatory acts. However, New Jersey courts have consistently held that substantial assistance or encouragement suffices. *Tarr*, 181 N.J. at 83-84. Even indirect actions that enable or perpetuate discrimination can meet this threshold.

#### b. Defendants Ignore Key Evidence

Defendants' argument disregards substantial evidence of their active involvement in the discriminatory conduct, including:

*Emails Documenting Unauthorized Disclosures*: Emails sent by Scott and Charles Creighton explicitly disclosed Plaintiff's private medical information to numerous parties, amplifying the harm caused to Plaintiff's reputation and well-being.

16

*Testimony Confirming Retaliatory Intent*: Deposition testimony from Adora Ambrose and other witnesses confirms that both Defendants played central roles in coercing Plaintiff into FMLA leave and subsequently terminating his employment.

*Deliberate Actions to Undermine Plaintiff*: Internal records reveal a coordinated effort by Defendants to diminish Plaintiff's role and reputation within the company, culminating in his retaliatory termination.

Plaintiff has presented substantial evidence establishing a prima facie case of aiding and abetting under the NJLAD. Scott Creighton and Charles Creighton knowingly provided substantial assistance and encouragement in discriminatory actions against Plaintiff, actively participated in adverse employment decisions, and intentionally undermined Plaintiff's rights. Their conduct is precisely the type of behavior the NJLAD seeks to deter. Accordingly, Defendants' argument must be rejected.

## CONCLUSION

The evidence presented in this case overwhelmingly supports Plaintiff's claims and demonstrates Defendants' repeated and egregious violations of Plaintiff's rights under New Jersey law. Plaintiff has established, through deposition testimony, expert reports, and documented communications, that:

1. Defendants engaged in unauthorized disclosures of Plaintiff's private medical information, violating common law privacy protections and HIPAA obligations;

2. Defendants failed to accommodate Plaintiff's medical needs as required by NJLAD;

3. Defendants retaliated against Plaintiff for asserting his rights, culminating in his wrongful termination; and

4. Defendants Scott and Charles Creighton knowingly and intentionally aided and abetted these unlawful actions, further exacerbating the harm suffered by Plaintiff.

The damages Plaintiff suffered—financial, psychological, and reputational—are significant and directly attributable to Defendants' conduct. Expert analyses by Chris Whalen, CPA, and Dr. Rachel Powers, Psy.D., quantify and document the profound impact of Defendants' actions, underscoring the need for full redress.

Defendants have failed to present any viable defense to justify their actions or create a genuine dispute of material fact. Their deposition admissions, dismissive attitudes, and systemic disregard for employee rights eliminate any reasonable basis for their conduct. Summary judgment is warranted in Plaintiff's favor to provide justice for the harm inflicted and to hold Defendants accountable for their systemic violations.

Plaintiff respectfully requests that this Court grant summary judgment in his favor and provide full and appropriate relief to address the extensive harm he has endured. The evidence leaves no genuine issue of material fact. Defendants' actions and failure to present a viable defense justify a judgment as a matter of law in favor of Plaintiff.

Respectfully submitted,

January 17, 2025

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
90 Broad Street, 2nd Floor
New York, NY 10004