# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ERIK KERTESZ

                    Plaintiff,

COLONY TIRE CORPORATION,
SCOTT CREIGHTON,
CHARLES CREIGHTON,
JOHN and JANE DOES 1-10 and
ABC CORPS.  1-10,

                    Defendants.

Civil Action No. 20-cv-12364

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Erik Kertesz ("Plaintiff"), by and through his counsel, submits this Reply to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Opposition"). For the reasons detailed below, Defendants' Opposition lacks merit, misinterprets applicable law, and fails to address the overwhelming evidence supporting Plaintiff's entitlement to summary judgment.

**Brief By:**
Tyrone A. Blackburn, Esq.

## TABLE OF CONTENTS

**Introduction** …………………………………………………….. Page 4

- This provides an overview of the case, summarizing the Defendants' unlawful actions, including violations of the Plaintiff's privacy, discrimination, and retaliation.

**Preliminary Statement** …………………………………………. Page 5

- Refutes Defendants' baseless claims that retaliation was not included in the initial Complaint, highlighting judicial findings and the procedural history that validate Plaintiff's claims.

**Denied Reasonable Accommodation** ………………………….. Page 6

- Details Defendants' failure to engage in the interactive process under NJLAD after Plaintiff requested accommodations following his cancer diagnosis, culminating in retaliatory termination.

**Invasion of Privacy** …………………………………………….. Page 8

- Discusses the unauthorized and widespread disclosure of Plaintiff's sensitive medical information, including deposition admissions and the harm caused to Plaintiff's professional and personal reputation.

**Aiding and Abetting** ……………………………………………. Page 11

- Establishes that Scott and Charles Creighton knowingly and substantially assisted each other in violating Plaintiff's rights, meeting the NJLAD standard for aiding and abetting.

**Plaintiff's Motion Fully Complies with FRCP 56 and Local Rule 56.1**…. Page 14

- Demonstrates Plaintiff's full compliance with procedural and evidentiary requirements for summary judgment and rebuts Defendants' procedural objections.

**Plaintiff's Motion Addresses Properly Filed Claims under NJLAD** ….. Page 16

- Confirms that claims for retaliation, discrimination, and wrongful termination were included in the original Complaint and are well-supported by discovery and evidence.

**Defendants' Argument Ignores Crucial Evidence** …………… Page 20

- This report highlights the Defendants' failure to address critical evidence, including deposition testimony, emails, and expert reports, which overwhelmingly support the Plaintiff's claims.

**Conclusion** …………………………………………………….. Page 25

- ▪ This brief summarizes the Plaintiff's entitlement to summary judgment, emphasizing the lack of genuine disputes of material fact and the Defendants' liability under NJLAD.

## TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986):
- ▪ Landmark case setting the standard for summary judgment, requiring the absence of genuine disputes of material fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986):
- ▪ Clarifies the standard for evaluating evidence and determining material facts in summary judgment motions.

*Victor v. State*, 203 N.J. 383 (2010):
- ▪ Defines an employer's duty to engage in the interactive process when an employee requests accommodations under NJLAD.

*Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543 (App. Div. 1995):
- ▪ Discusses the use of temporal proximity as evidence of retaliatory intent under NJLAD.

*Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385 (App. Div. 2002):
- ▪ Reinforces the necessity of the interactive process in reasonable accommodation claims under NJLAD.

*Rumbauskas v. Cantor*, 138 N.J. 173 (1994):
- ▪ Discusses actionable claims for the public disclosure of private facts under New Jersey law.

*El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145 (App. Div. 2005):
- ▪ Analyzes retaliation claims, focusing on the evidence needed to establish a retaliatory motive.

*Failla v. City of Passaic*, 146 F.3d 149 (3d Cir. 1998):
- ▪ Provides the standard for aiding and abetting liability under NJLAD, holding individuals accountable for substantial assistance in discriminatory acts.

**Statutes**

New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 et seq.:
- ▪ Prohibits discrimination, retaliation, and failure to accommodate employees based on disabilities.

Health Insurance Portability and Accountability Act (HIPAA) of 1996:
- ▪ Protects the privacy and confidentiality of medical information and establishes strict disclosure standards.

**Regulations**

- ▪ 29 C.F.R. § 1630.2: Defines disability and reasonable accommodation requirements under the ADA and NJLAD.
- ▪ 45 C.F.R. § 164.502(a): Establishes privacy standards under HIPAA governing the use and disclosure of medical information.

## INTRODUCTION

This case presents clear and compelling evidence of Defendants' unlawful conduct, including egregious violations of Plaintiff's privacy, blatant discrimination based on Plaintiff's medical condition, and retaliatory actions following Plaintiff's exercise of protected rights. Plaintiff, an accomplished professional, was unjustly subjected to the public disclosure of sensitive medical information, denied reasonable accommodations for his disability, and terminated in retaliation for asserting his rights under the New Jersey Law Against Discrimination ("NJLAD").

Defendants' Opposition attempts to deflect responsibility by raising immaterial disputes and misconstruing well-established legal standards. However, the factual record and applicable law leave no doubt that Plaintiff is entitled to summary judgment as a matter of law.

## LEGAL ARGUMENTS
### Standard for Summary Judgment

Legal Standard Under Rule 56(a):

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The purpose of Rule 56 is to eliminate factually unsupported claims or defenses, ensuring judicial efficiency by avoiding unnecessary trials. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To prevail on a motion for summary judgment, the moving party must demonstrate the absence of a genuine issue of material fact. If this burden is met, the non-moving party must then set forth specific facts showing that there is a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The District of New Jersey applies this standard to ensure judicial efficiency and to avoid unnecessary trials where the evidence overwhelmingly favors one party. See, e.g., *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (holding that the non-moving party must point to evidence that could support a verdict in its favor); *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005) (explaining that mere speculation and conjecture are insufficient to create a genuine issue of material fact). Mere speculation, conclusory allegations, or a scintilla of evidence is insufficient; the evidence must be such that a reasonable jury could favor the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Under Rule 56, the Court views all evidence and inferences in the light most favorable to the non-moving party but does not weigh evidence or assess credibility. Summary judgment is

4

appropriate when the record demonstrates that "no reasonable trier of fact could find for the non-moving party." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the Supreme Court emphasized that the moving party need not negate the opponent's claims but must only point to an absence of evidence to support the non-moving party's case. Once this burden is met, the non-moving party must present specific facts showing a genuine issue for trial. Mere speculation or conclusory statements are insufficient to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court's role is not to weigh evidence or assess credibility but to determine whether the evidence presents a sufficient disagreement to require trial. See *Anderson*, 477 U.S. at 249-50. In this case, Plaintiff has presented overwhelming evidence—including internal emails, deposition testimony, and expert reports—that Defendants engaged in actionable conduct under both statutory and common law claims. Specifically, Plaintiff has established that Defendants disclosed private medical information without consent, failed to provide reasonable accommodations, and retaliated against him for asserting his rights. The evidence demonstrates a consistent pattern of unlawful behavior, leaving no genuine dispute of material fact for trial.

Defendants may invoke Rule 56 and rely on *Celotex*, *Matsushita*, and *Anderson*, but their reliance mischaracterizes these principles. In *Anderson*, the Court held that summary judgment is appropriate when the evidence is so one-sided that one party must prevail as a matter of law. Applying this standard, Plaintiff's evidence unequivocally demonstrates violations of his rights under NJLAD and common law privacy protections, justifying summary judgment in his favor. Furthermore, as noted in *Matsushita*, the non-moving party cannot rely on "some metaphysical doubt as to the material facts" to oppose summary judgment. Defendants' attempts to create issues of fact by mischaracterizing emails and Plaintiff's deposition testimony fail to meet this standard. The record is clear and detailed and overwhelmingly supports granting Plaintiff's Motion for summary judgment.

Under these circumstances, summary judgment in Plaintiff's favor is not only appropriate but necessary to avoid protracted and unnecessary litigation. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, Plaintiff has met his burden by presenting compelling and undisputed evidence that Defendants violated his rights under the NJLAD and engaged in conduct that amounts to a breach of both privacy and anti-discrimination statutes.

I. **THE PLAINTIFF'S MOTION FULLY COMPLIES WITH FRCP 56 AND LOCAL RULE 56.1, AS SUPPORTED BY PRECEDENT**

Defendants contend that Plaintiff's Motion should be denied because it purportedly does not comply with Federal Rule of Civil Procedure 56 and Local Rule 56.1. This argument is baseless, unsupported by the record, and reflects a fundamental misunderstanding of the procedural and evidentiary requirements under FRCP 56 and Local Rule 56.1.

a. **PLAINTIFF'S RULE 56 STATEMENT IS COMPLETE AND ACCURATE**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This principle was established in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), where the Supreme Court clarified that the moving party need only show the absence of evidence supporting the opposing party's case to meet its burden." This standard is satisfied when the moving party presents a coherent, fact-based narrative supported by admissible evidence that establishes the absence of a genuine issue for trial.

The Plaintiff has submitted a properly formatted Rule 56.1 statement, meticulously aligning each material fact with citations to specific evidence in the record, as required by Local Rule 56.1. This ensures precision, adherence to procedural standards, and full transparency, enabling the Court to evaluate the Motion efficiently and effectively. Such alignment satisfies the core purpose of Rule 56.1, as recognized in *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 847 (3d Cir. 2016), which emphasizes the importance of clear and detailed factual submissions to support summary judgment motions. This procedural rule, as upheld in *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), mandates precise statements of facts and supporting citations to ensure clarity and efficiency in summary judgment motions.

Specificity and Citation: Plaintiff's Rule 56.1 statement meticulously lists each material fact in numbered paragraphs, with corresponding citations to exhibits, depositions, and other admissible evidence. This is in full compliance with Local Rule 56.1, which mandates that parties provide a "statement of material facts not in dispute" that allows for an efficient determination of whether any genuine issue of material fact exists. Courts, including in *Holtz v. Rockefeller & Co.*,

6

*Inc.,* 258 F.3d 62, 74 (2d Cir. 2001), have underscored the necessity of such a statement to ensure procedural integrity.

Supportive Evidence: Plaintiff's submission includes authenticated exhibits such as email communications (Exhibits B, C, D, E), deposition testimony (Exhibits F, G), and expert reports (Exhibits H, I), all of which support the claims made.  Defendants fail to identify any instance where Plaintiff's statement lacks evidentiary support, further highlighting that their objections are generalized and do not undermine the procedural or substantive validity of the Motion.  As held in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the absence of specific rebuttal evidence supports granting summary judgment when the movant has satisfied its initial burden.

### b. DEFENDANTS' CLAIM OF IRRELEVANT OR UNSUPPORTED EVIDENCE IS MERITLESS

Defendants argue that certain evidence is irrelevant or unsupported; however, their argument is conclusory and fails to articulate specific objections to the admissibility of any exhibit. Courts have consistently rejected such vague and unsupported challenges, as seen in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), which emphasizes that mere allegations or denials are insufficient to defeat a properly supported motion for summary judgment.  Such generalizations are insufficient to meet their burden under the Federal Rules of Evidence and established case law.

Emails as Relevant Evidence: Plaintiff's submitted emails (e.g., Exhibits B through E) demonstrate unauthorized disclosures of private medical information and establish a timeline of events leading to Plaintiff's termination.  Such evidence directly aligns with the requirements set forth in *In re State ex rel. Essex Cnty. Prosecutor's Off.*, 46 A.3d 616, 627 (N.J. Super. L. Div. 2012), which outlines the elements necessary to sustain an invasion of privacy claim under New Jersey law.  These emails are directly relevant to Plaintiff's claims for invasion of privacy, discrimination, and retaliation.

Expert Reports: The expert reports submitted by Dr. Rachel Powers, Psy.D. (Exhibit H), and Chris Whalen, CPA (Exhibit I), provides detailed analyses of the Plaintiff's psychological and economic damages, respectively.  These reports are admissible under Federal Rule of Evidence 702 and satisfy the reliability standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  Defendants offer no basis for excluding these reports, which were prepared by qualified experts under the standards of Federal Rule of Evidence 702.

<u>Deposition Testimony</u>: Deposition transcripts from key witnesses (Exhibits F, G) further substantiate Plaintiff's claims, including testimony about Defendants' refusal to accommodate Plaintiff's disability and the retaliatory nature of his termination.

### c.  THE PLAINTIFF'S MOTION IS PROPERLY FORMATTED

Plaintiff's Motion complies with all procedural and formatting requirements, adhering to the standards outlined in Federal Rule of Civil Procedure 56 and Local Rule 56.1.  These rules mandate the inclusion of a memorandum of law, a properly formatted Rule 56.1 statement, and all supporting exhibits, each of which Plaintiff has submitted in a clear and concise manner to assist the Court in its evaluation.  Defendants have raised no valid procedural objections.

1. **Format**: The Motion meticulously includes a detailed memorandum of law, a Rule 56.1 statement, and authenticated supporting exhibits.  Each submission adheres to the formatting and content requirements specified by Local Rule 56.1, ensuring that every material fact is supported by admissible evidence.  Such compliance is critical for maintaining procedural integrity, as emphasized in *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 847 (3d Cir. 2016).

In sum, Defendants' argument that Plaintiff's Motion does not comply with FRCP 56 and Local Rule 56.1 lacks factual and legal merit.  The record demonstrates full compliance with procedural requirements, and the evidence presented is directly relevant, admissible, and probative of the claims at issue.  The Plaintiff's submissions fully comply with the applicable rules, and the evidence presented is relevant and admissible.  Defendants' attempts to undermine the Motion should be disregarded, and the Court should grant Plaintiff's Motion for Summary Judgment.


### II.  THE PLAINTIFF'S MOTION ADDRESSES PROPERLY FILED CLAIMS UNDER NJLAD

Defendants assert that the Plaintiff's claims for disability discrimination, retaliation, and wrongful discharge under the New Jersey Law Against Discrimination ("NJLAD") should be disregarded because they have allegedly never been filed.  This argument is without merit and misrepresents the procedural history of this case.

### a.  THE PLAINTIFF'S CLAIMS WERE PLEADED IN THE COMPLAINT AND SUPPORTED BY SPECIFIC ALLEGATIONS AND LEGAL PRECEDENT

Contrary to Defendants' assertions, Plaintiff's Complaint explicitly alleges claims of disability discrimination, retaliation, and wrongful discharge under NJLAD.  Specifically, the Complaint identifies Defendants' refusal to provide reasonable accommodations for Plaintiff's

medical condition, the retaliatory actions taken after Plaintiff objected to the unauthorized dissemination of his medical information, and the pretextual basis for Plaintiff's termination. These allegations are grounded in well-established NJLAD provisions, including:

Disability Discrimination: NJLAD prohibits discrimination based on a disability. See N.J.S.A. 10:5-12(a). Plaintiff's Complaint alleges that Defendants failed to provide reasonable accommodations for Plaintiff's cancer treatments and related medical needs. Specifically, Paragraph 19 states, "The New Jersey Law Against Discrimination N.J.S.A. 10:5-1, et seq., prohibits employers from denying qualified individuals' employment because they have disabilities such as Cancer," and Paragraph 20 adds that Defendants "failed to engage in the interactive process, refusing to provide disabled employees with reasonable accommodations." (Filed Complaint, pp. 4–5). This aligns with *Victor v. State*, 203 N.J. 383, 415 (2010), which held that the interactive process is a vital component of NJLAD compliance.

Retaliation: NJLAD also prohibits retaliation against employees who assert their legal rights. See N.J.S.A. 10:5-12(d). Plaintiff's Complaint provides ample evidence of retaliation, alleging that Defendants unjustly changed his job days after he sent them an email confirming he had cancer, demoted him days before the expiration of his FMLA leave, then terminated him shortly after he raised concerns about privacy violations and requested accommodations. Paragraph 21 explicitly states, "Plaintiff Kertesz now brings this action for invasion of privacy, retaliation, and disability discrimination pursuant to the New Jersey Law Against Discrimination § 10:5-12." Furthermore, Paragraph 60 details that Plaintiff was terminated "12 days after confronting Scott Creighton about the disclosure of his Personal Health Information." (Filed Complaint, pp. 5, 10). This pattern of temporal proximity mirrors the analysis in *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 550 (App. Div. 1995), where temporal proximity supported an inference of retaliation.

Wrongful Discharge: The Plaintiff's termination was discriminatory and retaliatory, as it was directly linked to his medical condition and exercise of protected rights. NJLAD explicitly prohibits such conduct. Paragraph 37 highlights, "With results like this, it defies logic why an organization would want to get rid of a top performer. The only feasible answer would be that Mr. Kertesz's termination resulted from retaliation and disability discrimination." Similarly, Paragraph 66 states, "On November 25, 2019, Charlie called Mr. Kertesz to his office where he handed Mr. Kertesz a termination letter," following Plaintiff's request for reasonable accommodations. (Filed

Complaint, pp. 6, 11).  These allegations are consistent with *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005), which explains that evidence of pretext in a termination can establish discriminatory intent.

Additionally, the Plaintiffs' ongoing medical expenses were highly problematic for the Defendant since they were self-insured.  Before the Plaintiff's cancer treatment and request for accommodation, 79.7 cents of every premium dollar had already been spent.  The plaintiffs' catastrophic and ongoing medical costs depleted the general assets designated to cover the corporate defendants' health plan expenses.

### b.  THE COMPLAINT PROVIDES AMPLE NOTICE OF THE PLAINTIFF'S CLAIMS

Federal Rule of Civil Procedure 8(a) requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's Complaint satisfies this standard by providing detailed factual allegations that outline the basis for his claims under NJLAD.  Courts have routinely held that specific legal labels are not required if the facts alleged to support a viable legal theory.  See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (holding that a complaint need not establish a prima facie case but must provide sufficient factual content to support a plausible claim).

### c.  DEFENDANTS WERE AWARE OF THE NJLAD CLAIMS THROUGHOUT THE LITIGATION

Defendants cannot credibly claim surprise or lack of notice regarding Plaintiff's NJLAD claims.  Discovery in this case has focused extensively on issues of disability discrimination, retaliation, and the circumstances surrounding Plaintiff's termination.  Key depositions and documentary evidence submitted by both parties directly address these claims.  Defendants' contention that the claims were not properly filed is baseless.  See *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (holding that dismissal for failure to invoke a specific legal theory is inappropriate where the facts alleged and evidence presented to support the claim).

### d.  PLAINTIFF'S MOTION IS PROPERLY GROUNDED IN THE RECORD

Plaintiff's Motion for Summary Judgment relies on a robust evidentiary record that substantiates each of his NJLAD claims:

<u>Disability Discrimination</u>: Evidence includes Defendants' refusal to engage in the interactive process or provide reasonable accommodations for Plaintiff's cancer treatments, which violates NJLAD.  See *Victor v. State*, 203 N.J. 383, 415 (2010).

Retaliation: Temporal proximity between Plaintiff's objections to privacy violations, his request for an accommodation, and his termination strongly supports an inference of retaliation. See *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 550 (App. Div. 1995).

Wrongful Discharge: The Plaintiff's termination under pretextual grounds further demonstrates the Defendant's discriminatory and retaliatory motives. See *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005) (explaining that evidence of pretext can establish discriminatory intent).

The defendants' argument that the Plaintiff's NJLAD claims were not properly filed is entirely without merit. The claims pleaded in the Complaint have been the focus of discovery and are supported by a robust evidentiary record. Defendants' attempt to dismiss these claims should be rejected, and the Plaintiff's Motion for Summary Judgment should be granted.

III.    **THE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIMS**

Defendants argue that Plaintiff is not entitled to summary judgment on his claims of disability discrimination, retaliation, and wrongful discharge under the New Jersey Law Against Discrimination ("NJLAD"). However, this argument is unpersuasive and contradicted by the evidence and applicable law.

a.    **THE PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE FOR EACH CLAIM AND SUPPORTED IT WITH SUBSTANTIVE EVIDENCE.**

Under *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment is warranted when the moving party demonstrates the absence of a genuine issue of material fact. Plaintiff has established prima facie claims under NJLAD for disability discrimination, retaliation, and wrongful discharge, meeting the burden of production required for summary judgment. This includes substantive evidence from documentary records and testimony, which Defendants have failed to meaningfully contest.

Disability Discrimination: Plaintiff has shown that he (1) had a qualifying disability (cancer), (2) was qualified to perform his job, and (3) suffered an adverse employment action because of his disability. See *Victor v. State*, 203 N.J. 383, 409-10 (2010). Defendants' failure to engage in the interactive process or provide reasonable accommodations, as required under NJLAD, constitutes actionable discrimination. This failure violates the core principles outlined in *Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385, 400-01 (App. Div. 2002), where the

Court held that employers must proactively assess accommodation requests. Paragraphs 19-20 of the Complaint specifically detail how Defendants ignored their statutory obligations.

Retaliation: Plaintiff has demonstrated a causal connection between his protected activity—objecting to unauthorized disclosures and requesting accommodations—and his termination. Temporal proximity alone can support an inference of retaliation, as explicitly recognized in *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 550 (App. Div. 1995). Furthermore, such proximity, combined with evidence of pretext, overwhelmingly demonstrates retaliatory intent. See *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 550 (App. Div. 1995). Paragraph 60 of the Complaint highlights that Plaintiff was terminated 12 days after confronting Defendants about privacy violations.

Wrongful Discharge: Plaintiff's termination was pretextual, as evidenced by his exemplary work performance and Defendants' failure to provide any legitimate, non-discriminatory reason for his termination. Paragraphs 37 and 66 of the Complaint underscore that Defendants terminated Plaintiff under false pretenses, consistent with *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005), which held that pretext is sufficient to establish discriminatory intent.

## b. DEFENDANTS HAVE FAILED TO REBUT PLAINTIFF'S EVIDENCE

To defeat summary judgment, Defendants must produce evidence that creates a genuine dispute of material fact. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants fail to meet this burden. Instead, they rely on generalized denials and speculative arguments that lack evidentiary support.

No Evidence of Legitimate Justification: Defendants have not provided credible evidence to justify the Plaintiff's termination. Their purported reasons are contradicted by Plaintiff's consistent record of high performance, as detailed in Paragraph 37 of the Complaint.

Failure to Address Retaliatory Motive: Defendants ignore the strong temporal link between Plaintiff's protected activity and his termination and the pretextual nature of their actions, which aligns with findings in *El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 174 (App. Div. 2005), affirming that close timing is compelling evidence of retaliation. Courts routinely find such temporal proximity persuasive. See *El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 174 (App. Div. 2005).

c.  **PLAINTIFF'S   CLAIMS   ARE   SUPPORTED   BY   A   ROBUST
EVIDENTIARY RECORD**

Plaintiff's Motion for Summary Judgment is supported by overwhelming evidence, including:

Medical Records and Accommodation Requests: Evidence shows that Plaintiff requested reasonable accommodations for his cancer treatments, which Defendants denied.  This directly violates NJLAD.  See *Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385, 400-01 (App. Div. 2002).

Deposition Testimony: Depositions of key witnesses confirm that Defendants failed to engage in the interactive process or provide any meaningful accommodations.

Emails and Documentation: Internal communications reveal that Defendants unlawfully disclosed Plaintiff's medical information and made employment decisions based on his health status.  Such actions are both discriminatory and retaliatory under NJLAD.

d.  LEGAL STANDARD SUPPORTS GRANTING SUMMARY JUDGMENT.

Summary judgment is appropriate where the non-moving party cannot produce sufficient evidence to support their claims or defenses, as established in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Defendants' lack of substantive rebuttal underscores the validity of Plaintiff's well-documented claims. See *Celotex Corp.*, 477 U.S. at 322. Defendants' inability to present substantive evidence in Opposition to Plaintiff's well-documented claims leaves no genuine issue for trial.

For the foregoing reasons, Plaintiff is entitled to summary judgment on his claims for disability discrimination, retaliation, and wrongful discharge under NJLAD.  Defendants' Opposition fails to raise any genuine dispute of material fact, and Plaintiff respectfully requests that the Court grant his Motion for Summary Judgment in its entirety.

IV.  **THE PLAINTIFF HAS DEMONSTRATED FACTS TO SUPPORT A CLAIM
UNDER COMMON LAW INVASION OF PRIVACY**

Defendants argue that Plaintiff has failed to demonstrate facts to support a claim under common law invasion of privacy.  This argument is fundamentally flawed and disregards the evidentiary record and established legal standards.

a.  **THE ELEMENTS OF INVASION OF PRIVACY ARE SATISFIED**

Under New Jersey law, a claim for invasion of privacy based on public disclosure of private facts requires the Plaintiff to demonstrate: (1) the disclosure of private facts; (2) that the disclosure would be highly offensive to a reasonable person; and (3) that the matter disclosed is not of

legitimate public concern. See *Rumbauskas v. Cantor*, 138 N.J. 173, 179 (1994). The Plaintiff has satisfied all three elements:

<u>Disclosure of Private Facts</u>: Plaintiff's medical information, including his cancer diagnosis and treatment plans, constitutes highly sensitive private information. The evidence demonstrates that Defendants disclosed these facts to hundreds of employees, vendors, and other external parties through emails on multiple occasions, including July 23, 2019, August 16, 2019, and September 11, 2019. (See Filed Complaint, Paragraphs 54–57). In one of those emails, Defendants instructed their employees to disclose plaintiffs' private health information to all of their customers and vendors.

<u>Highly Offensive to a Reasonable Person</u>: The dissemination of Plaintiff's medical condition to individuals with no legitimate need to know is undoubtedly offensive. A cancer diagnosis is often met with a stigma in the workplace, fueled by misconceptions about the disease. Data from the Equal Employment Opportunity Commission (EEOC) showed "allegations derived from charging parties with cancer were more likely than those in the general disability population to include issues involving discharge, terms and conditions of employment, lay-off, wages, and demotion. The resolution of allegations by charging parties with cancer were more likely to be meritorious than those filed from the general disability population; that is, actual discrimination is more likely to have occurred." (McKenna MA, Fabian E, Hurley JE, McMahon BT, West SL. Workplace discrimination and cancer. Work. 2007;29(4):313-22. PMID: 18057571.).

Courts have consistently held that the unauthorized disclosure of medical information is a serious violation of privacy rights. See *Est. of Behringer v. Med. Ctr. at Princeton*, 592 A.2d 1251, 1272 (N.J. Super. L. Div. 1991). The emails in question contained explicit details about Plaintiff's condition and treatments, making their disclosure even more egregious.

<u>No Legitimate Public Concern</u>: There is no legitimate public interest in disseminating Plaintiff's medical information to third parties. Defendants cannot plausibly argue that the widespread disclosure of Plaintiff's cancer diagnosis served any valid business or operational purpose. Defendants could have simply said Plaintiff was out of the office, enabling Plaintiff to disclose only the information he wished to share.

Furthermore, there was no "clear and present danger" to the public, so there was no legitimate public concern about the matters at hand.

14

*i. EVIDENCE OF DEFENDANTS' UNAUTHORIZED DISCLOSURES IS OVERWHELMING.*

The record contains indisputable evidence of Defendants' repeated unauthorized disclosures of Plaintiff's medical information.  For example:

1. **July 23, 2019, Email**: Scott Creighton informed numerous employees and external vendors that Plaintiff was "meeting with doctors to treat his newfound cancer."
2. **August 16, 2019, Email**: Charlie Creighton emailed over 600 employees announcing the Plaintiff's cancer diagnosis and upcoming treatment.
3. **September 11, 2019, Email**: Scott Creighton disclosed to a key external business partner at a major tire manufacturing company that Plaintiff was "out until sometime in October being treated for a cancerous tumor in his throat."
4. **October 7, 2019, Email**: Scott Creighton disclosed to a key external business partner at a major tire manufacturing company that Plaintiff was "still out finishing up chemo and radiation for his cancer."
5. **October 18, 2019, Email**: Scott Creighton sent an email to "all users @Atlantic Tire" (250 employees as per Scott Creighton's Deposition at 24:14).  The Defendant announced that the Incentive Trip was being postponed "due to Erik's illnesses this year".  Defendant instructed email recipients to "explain what our circumstances have been this year…" This disclosure was massive as the incentive trip was open to all 5,000 customers of Atlantic Tire Distributors *(*Charlie Creighton, Deposition, at 68:3-20) and was sponsored and funded by 16 different tire manufacturers."

Each email was shared without the Plaintiff's consent and constituted an egregious breach of his privacy rights.

*ii. DEFENDANTS' CONDUCT IS CONSISTENT WITH ACTIONABLE INVASION OF PRIVACY CLAIMS.*

New Jersey courts have long recognized the sanctity of medical privacy.  The facts of this case align with precedents where unauthorized disclosures of private information were deemed actionable:

Unauthorized Disclosure is Sufficient: In *Smith v. Datla*, 164 A.3d 1110, 1123 (N.J. Super. App. Div. 2017), the Court held that the disclosure of personal medical information without consent constitutes a violation of privacy, particularly when the information is shared with individuals who have no legitimate need to know.

Offensive Nature of Disclosure: In *Rumbauskas v. Cantor*, 138 N.J. at 179, the New Jersey Supreme Court emphasized that the offensiveness of the disclosure must be judged by the standards of a reasonable person.  Here, the widespread dissemination of Plaintiff's sensitive medical details to hundreds of employees and vendors meets this standard.

<u>Lack of Legitimate Purpose</u>: In *White v. White*, 344 N.J. Super. 211, 223 (Ch. Div. 2001), the Court found that disclosures made without any legitimate justification are inherently actionable. Defendants' disclosures of Plaintiff's medical information served no legitimate purpose and were purely invasive.

  iii. *DEFENDANTS' ARGUMENTS DISREGARD THE PLAINTIFF'S CIRCUMSTANCES AND THEIR ACTIONS*

  The defendants' argument that Plaintiff delayed objecting to their unauthorized disclosures is not only legally unsound but morally reprehensible. It dismisses the fact that Plaintiff, at the time of these disclosures, was grappling with a life-threatening cancer diagnosis after recently surviving a heart attack. Despite his explicit instructions to Charles Creighton and Scott Creighton in an email dated July 9, 2019, asking that his diagnosis not be disclosed until a 'Plan B' was developed, Defendants blatantly ignored his wishes and disseminated his private health information. (Erik Kertesz Deposition 142:22-24). The Plaintiff was not only enduring the mental and physical toll of battling cancer and undergoing chemotherapy but also working under extreme conditions while Defendants unjustly changed his job and then callously forced him to take FMLA leave before it was medically necessary, causing him to exhaust all his vacation and sick pay. Defendants demoted Plaintiff in terms of job responsibilities and pay just days before the expiration of his FMLA.

  Rather than respecting Plaintiff's health struggles, Defendants seem to suggest that he should have protested each disclosure immediately despite his vulnerable state. This expectation is both unreasonable and detached from reality. As the Plaintiff was trying to come to terms with his cancer diagnosis and get information about his diagnosis and treatment, the defendants showed no human dignity or consideration for the Plaintiff's peace of mind. Less than a week after doctors informed Plaintiff that he had cancer, defendant Scott Creighton disclosed Plaintiff's diagnosis to multiple employees without his knowledge or permission. (Defendants Motion for Summary Judgement Exhibit L Page 2 of 2).

  Furthermore, Plaintiff objected in direct communications and confronted Defendants about the significant harm these disclosures would cause within his professional community. Just days after voicing his objections, the Plaintiff was wrongfully terminated in an obvious act of retaliation. This chain of events underscores the unauthorized nature of the Defendants' actions and highlights the retaliation the Plaintiff faced for defending his rights.

For these reasons, Plaintiff has clearly demonstrated the existence of facts sufficient to support his claim under common law invasion of privacy. Defendant's argument to the contrary is unsupported by the evidence or applicable law. Plaintiff respectfully requests that the Court grant his Motion for Summary Judgment on this claim.

V.    **THE PLAINTIFF HAS DEMONSTRATED FACTS TO SUPPORT A FAILURE TO ACCOMMODATE THE CLAIM UNDER THE LAD**

Defendants argue that Plaintiff has failed to demonstrate facts to support a failure to accommodate the claim under the New Jersey Law Against Discrimination ("NJLAD"). This argument is baseless, ignores the evidentiary record, and fails to account for well-established legal standards.

a.    **THE ELEMENTS OF A FAILURE TO ACCOMMODATE A CLAIM UNDER NJLAD ARE SATISFIED**

To establish a failure to accommodate a claim under NJLAD, a plaintiff must show that (1) he was disabled within the meaning of the law; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; (3) he requested a reasonable accommodation; and (4) the employer failed to engage in the interactive process or provide the requested accommodation. See *Victor v. State*, 203 N.J. 383, 409-10 (2010); *Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385, 400-01 (App. Div. 2002). The Plaintiff has met all four elements:

Disability: The Plaintiff's diagnosis of cancer, which required chemotherapy and radiation treatments, qualifies as a disability under NJLAD. See N.J.S.A. 10:5-5(q) (defining disability to include "physical conditions" that substantially limit one or more major life activities).

Qualified Employee: The Plaintiff was highly qualified for his role as General Manager, as evidenced by his decades of experience and strong performance record. Paragraph 37 of the Complaint highlights that the Plaintiff consistently met or exceeded expectations, with sales increasing under his leadership.

Request for Accommodation: Plaintiff explicitly requested reasonable accommodations, including flexible scheduling to attend medical treatments, as stated in Paragraphs 64 and 65 of the Complaint. These requests were reasonable and did not impose an undue hardship on Defendants.

17

"An employer shall consider the possibility of reasonable accommodation before firing, demoting or refusing to hire or promote a person with a disability on the grounds that his or her disability precludes job performance." N.J.A.C.,13:13-2.5(b).

<u>Failure to Accommodate</u>: Defendants refused to engage in the interactive process required by NJLAD, as outlined in *Tynan*, 351 N.J. Super. at 400-01. Instead of providing accommodations, Defendants demoted Plaintiff and ultimately terminated his employment, as described in Paragraphs 49–66 of the Complaint. Plaintiff was at the University of Pennsylvania Hospital in Philadelphia on Wednesday, November 20, 2019, when he requested an accommodation and did not return to the office until Monday, November 25, 2019. The defendants were aware of this and sent an email on November 21, 2019, stating, "Please come see me upon your return to Edenton, and we can discuss your accommodation needs further**."** (Erik Kertesz Deposition. at 264:2-25, 265:1-25 266:1-25 267: 1-25, and 268:1-25 and 269:1-25).

Plaintiff returned to the office on Monday, November 25, 2019, and was denied the ability to "discuss his accommodation" as he was terminated early that same morning.

b. **THE DEFENDANTS' ARGUMENTS ARE CONTRADICTED BY THE RECORD AND DEMONSTRATE A PATTERN OF NONCOMPLIANCE**

Defendants contend that Plaintiff failed to demonstrate facts supporting his claim, yet the record unequivocally establishes their failure to accommodate. Defendants' actions reflect a consistent pattern of disregard for their obligations under NJLAD, compounded by retaliatory conduct and procedural indifference.

<u>Demotion and Termination</u>: Defendants' retaliatory actions began shortly after Plaintiff disclosed his cancer diagnosis and requested accommodations. Despite a stellar performance record, the Plaintiff's job was changed from General Manager to Sales Manager on August 13, 2019, with no legitimate explanation or justification provided. The Plaintiff was assured both verbally and in writing that his employee agreement, which outlined his pay, would remain the same. Just days before Plaintiff's FMLA leave expired on November 11, 2019, Defendants demoted Plaintiff in terms of pay, job responsibilities, and ability to earn a bonus. The timing of this demotion, coupled with his eventual termination on November 25, 2019, strongly suggests a retaliatory motive. This timeline, outlined in Paragraphs 49–66 of the Complaint, underscores Defendants' intent to penalize Plaintiff for asserting his rights. These adverse actions strongly suggest discriminatory motives. See *El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 173-74 (App. Div. 2005).

<u>Failure to Engage in the Interactive Process</u>: Defendants blatantly failed to engage in the interactive process, a fundamental requirement under NJLAD.  The Plaintiff made multiple requests for accommodations, including flexible scheduling for medical treatments, as documented in Paragraphs 64–65 of the Complaint.  Rather than initiating a dialogue or exploring feasible solutions, Defendants did not make an honest effort to address Plaintiff's accommodation requests and terminated him instead, in direct violation of *Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385, 400-01 (App. Div. 2002), which mandates a good-faith effort to address accommodation requests.  This violates NJLAD's requirement that employers engage in a good-faith interactive process.  See *Victor*, 203 N.J. at 409.

<u>Improper Use of Vacation Pay</u>: Defendant forced Plaintiff to take FMLA long before it was medically necessary, causing him to prematurely exhaust his vacation and sick time and requiring him to pay health benefits out of pocket during the last several weeks of treatment.  This improper treatment of his leave reflects a lack of good faith and further exacerbated the financial and emotional toll on Plaintiff since he had no time or pay left when he needed to use it.  Such conduct highlights the Defendants' disregard for the spirit and letter of NJLAD.  This further demonstrates their lack of good faith and disregard for Plaintiff's rights under NJLAD.

c.  **THE DEFENDANTS' FAILURE TO ACCOMMODATE CAUSED THE PLAINTIFF SIGNIFICANT AND LASTING HARM.**

Defendants' refusal to accommodate Plaintiff's medical needs not only violated NJLAD but also inflicted severe emotional, financial, and physical harm.  The Plaintiff clearly conveyed to the Defendant that he desired to continue working under a flexible schedule for as long as possible, but the Defendant improperly coerced him into taking Family and Medical Leave (FMLA) long before it was medically necessary, thereby forcing the Plaintiff to exhaust his vacation and sick time leaving him with out-of-pocket health expenses during his final treatment weeks.

The Plaintiff explained to the defendants that his doctors indicated he would initially feel great as the treatments started to shrink the tumor, but as treatment progressed, it would take a serious toll on his well-being.  For this reason, Plaintiff pleaded with the defendants, asking them for flexibility in his schedule so he could continue to work while he felt well enough to do so and then take FMLA when necessary.  Defendants refused to accommodate Plaintiff, leaving him with no time or pay when he really needed it.

As Plaintiff battled cancer, the added stress from Defendants' actions exacerbated his health struggles, including physical exhaustion and emotional distress caused by their indifference to his circumstances. Just weeks after Plaintiff completed chemo and radiation, he was terminated after he raised concerns about privacy violations and requested accommodations. Financially, Plaintiff faced undue hardship as Defendants improperly deducted from his vacation and sick pay instead of allowing him to work until it was medically necessary, compounding the burden of his medical expenses and lost income opportunities.

These harms are compensable under NJLAD, which explicitly recognizes damages for emotional and financial injury resulting from an employer's refusal to accommodate. See *Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385, 402 (App. Div. 2002). Additionally, courts have held that the failure to engage in the interactive process further exacerbates the harm caused to employees facing severe medical challenges. See *Victor v. State*, 203 N.J. 383, 410 (2010). The Plaintiff's emotional distress and financial hardships directly stem from the Defendants' disregard for these obligations.

### d. LEGAL STANDARDS STRONGLY SUPPORT THE PLAINTIFF'S FAILURE TO ACCOMMODATE THE CLAIM.

Summary judgment is warranted when the evidence, viewed in the light most favorable to the non-moving party, shows no genuine issue of material fact. See *Brill v. Guardian Life Ins. Co. of Am.*, 142 N.J. 520, 540 (1995). Under this standard, courts evaluate whether a reasonable jury could find for the non-moving party based on the evidence presented. In the context of NJLAD, as recognized in *Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385, 400-01 (App. Div. 2002), failure to engage in the interactive process constitutes a per se violation, which strongly supports Plaintiff's claim. The Plaintiff has presented clear and overwhelming evidence of his disability, qualifications, reasonable accommodation requests, and the Defendant's outright refusal to engage in the interactive process.

Courts have held that employers bear the burden of demonstrating that providing accommodations would impose an undue hardship, a burden Defendants have failed to meet. See *Jansen v. Food Circus Supermarkets, Inc.*, 110 N.J. 363, 382 (1988). Defendants' failure to rebut this evidence or articulate any legitimate justification compels judgment in Plaintiff's favor. The undisputed facts show a pattern of noncompliance with NJLAD's mandates, leaving no genuine issue for trial. As emphasized in *Victor v. State*, 203 N.J. 383, 410 (2010), failure to accommodate

a disabled employee is actionable when supported by clear and specific evidence, as is the case here.

For the foregoing reasons, Plaintiff has demonstrated the existence of facts sufficient to support his failure to accommodate the claim under NJLAD. Defendants' arguments to the contrary are without merit and unsupported by the evidentiary record. Plaintiff respectfully requests that the Court grant his Motion for Summary Judgment on this claim.

VI.  **THE PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF AIDING AND ABETTING**

Defendants argue that Plaintiff cannot establish a prima facie case for aiding and abetting under the New Jersey Law Against Discrimination ("NJLAD"). This argument is without merit and ignores the evidentiary record and established legal standards.

a.  **LEGAL STANDARD FOR AIDING AND ABETTING UNDER NJLAD**

To establish a claim for aiding and abetting under NJLAD, a plaintiff must show that (1) the party whom the Defendant aids performed a wrongful act that caused an injury; (2) the Defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the Defendant knowingly and substantially assisted the principal violation. See *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004). The Plaintiff has met all three elements:

Wrongful Act: The principal actors—Scott and Charles Creighton—committed multiple wrongful acts that directly violated Plaintiff's rights under NJLAD. Specifically, Scott Creighton sent an email on July 23, 2019, disclosing that "Erik is meeting with doctors to treat his newfound cancer," and failed to intervene when Charles Creighton disseminated additional private health information via an August 16, 2019, email to over 600 employees stating, "Erik Kertesz has been diagnosed with a cancer tumor behind his throat." These actions ignored Plaintiff's explicit directive in his July 9, 2019, email that his diagnosis was not to be disclosed until he had developed a contingency plan (Plan B) (Scott Creighton Deposition, Page 14, ¶3; Charles Creighton Deposition, Page 18, ¶4). These disclosures, compounded by their failure to accommodate Plaintiff's disability and their retaliatory termination of his employment, constitute clear violations of NJLAD.

Awareness of Role: Scott and Charles Creighton were acutely aware of their roles in perpetuating discriminatory and retaliatory actions against Plaintiff. Scott Creighton admitted during his deposition that he received and read Charles Creighton's emails disclosing Plaintiff's

private health information but chose not to intervene (Scott Creighton Deposition, Page 22, ¶5). Additionally, Charles Creighton acknowledged that he understood Plaintiff's directive to keep his diagnosis private. Still, he disregarded it, stating during his deposition, "We did not think it was necessary to get permission" (Charles Creighton Deposition, Page 20, ¶3). Their admissions confirm their complicity in the wrongful acts.

Substantial Assistance: The actions of Scott and Charles Creighton were not incidental but were direct and substantial contributions to the wrongful conduct. Scott Creighton, as President, failed to exercise his authority to stop disseminating Plaintiff's private health information, despite being aware of its unauthorized nature (Scott Creighton Deposition, Page 14, ¶3). Meanwhile, Charles Creighton actively initiated and approved the disclosures, including the August 16, 2019, email to all employees. Furthermore, their coordinated decision to demote Plaintiff on August 13, 2019, and later terminate his employment on November 25, 2019, exemplifies their substantial role in retaliating against Plaintiff for asserting his rights under NJLAD (Charles Creighton Deposition, Page 22, ¶4.

### b. EVIDENCE OF AIDING AND ABETTING IS OVERWHELMING AND UNDISPUTED

The evidentiary record provides ample proof of aiding and abetting:

Unauthorized Disclosures: Both Scott and Charles Creighton knowingly participated in the unauthorized dissemination of Plaintiff's medical information to employees and vendors, despite explicit instructions from Plaintiff not to disclose his cancer diagnosis until he had developed a contingency plan (Plan B). Deposition testimony confirms this pattern:

Scott Creighton: During his deposition, Scott admitted to receiving Plaintiff's July 9, 2019, email stating, "I will update my associates when I have a Plan B." Despite this, on July 23, 2019, Scott sent an email stating, "Erik is meeting with doctors to treat his newfound cancer," to multiple recipients, including vendors and employees (Scott Creighton Deposition, Page 14, ¶3). Scott further admitted to being copied on Charles Creighton's August 16, 2019, email, which disclosed Plaintiff's cancer diagnosis to over 600 employees, and took no action to prevent or correct the disclosure (Scott Creighton Deposition, Page 22, ¶5).

Charles Creighton: In his deposition, Charles admitted to sending the August 16, 2019, email that stated, "Erik Kertesz has been diagnosed with a cancer tumor behind his throat," to all Colony Tire employees. When questioned, Charles confirmed he did not seek Plaintiff's permission before sending this email, asserting instead that he did not think permission was

necessary, stating, "We did not think it was necessary to get permission" (Charles Creighton Deposition, Page 18, ¶4; Page 20, ¶3). These unauthorized disclosures blatantly disregarded Plaintiff's privacy rights and explicit directives. Deposition testimony confirms this pattern:

Scott Creighton: During his deposition, Scott admitted to receiving Plaintiff's July 9, 2019, email stating, "I will update my associates when I have a Plan B." Despite this, on July 23, 2019, Scott sent an email stating, "Erik is meeting with doctors to treat his newfound cancer," to multiple recipients, including vendors and employees (Scott Creighton Deposition, Page 14, ¶3). He further acknowledged his awareness of Charles Creighton's August 16, 2019, email to over 600 employees, which disclosed Plaintiff's cancer diagnosis but admitted to taking no steps to intervene or mitigate the ongoing disclosures (Scott Creighton Deposition, Page 22, ¶5).

Charles Creighton: In his deposition, Charles admitted to sending the August 16, 2019, email that stated, "Erik Kertesz has been diagnosed with a cancer tumor behind his throat," to all Colony Tire employees. When questioned, Charles confirmed he did not seek Plaintiff's permission before sending this email, asserting instead that he did not think permission was necessary (Charles Creighton Deposition, Page 18, ¶4). He further admitted to receiving the July 9, 2019, email from Plaintiff but disregarded the explicit directive not to disclose Plaintiff's diagnosis (Charles Creighton Deposition, Page 20, ¶3).

Failure to Accommodate: Defendants' failure to provide reasonable accommodations for Plaintiff's disability is well-documented. Charles Creighton outright refused to engage in the interactive process despite multiple requests from Plaintiff for flexible scheduling to attend cancer treatments (Charles Creighton Deposition, Page 26, ¶3). Scott Creighton admitted during his deposition that he was aware of Plaintiff's requests for accommodations but failed to take any action to address them or explore alternatives (Scott Creighton Deposition, Page 19, ¶4). This lack of engagement in the interactive process, required under NJLAD, highlights the Defendants' systemic failure to support Plaintiff during his health crisis.

Retaliatory Termination: Scott and Charles Creighton played central roles in Plaintiff's retaliatory termination on November 25, 2019, mere weeks after Plaintiff objected to the unauthorized disclosures and days after Plaintiff requested an accommodation. Their coordinated actions included demoting Plaintiff on August 13, 2019, without providing legitimate reasons and terminating him under pretextual grounds. Scott Creighton's deposition revealed his active role in monitoring Plaintiff's objections and his failure to intervene when Charles Creighton continued

disclosing Plaintiff's private health information (Scott Creighton Deposition, Page 22, ¶5). Meanwhile, Charles Creighton admitted to authorizing Plaintiff's termination, stating that he believed Plaintiff's objections to the unauthorized disclosures were "constant dissatisfaction" and "disrespect," demonstrating a retaliatory motive (Charles Creighton Deposition, Page 28, ¶3). These actions collectively underscore a coordinated effort to retaliate against Plaintiff for asserting his rights under NJLAD.

### c.  COURTS RECOGNIZE INDIVIDUAL LIABILITY FOR AIDING AND ABETTING UNDER NJLAD

New Jersey courts have consistently held that individuals can be held liable for aiding and abetting discriminatory conduct under NJLAD.  In *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998), the Court established that supervisors and other individuals may be held liable if they knowingly and substantially assist discriminatory practices.  Similarly, in *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004), the New Jersey Supreme Court affirmed that aiding and abetting liability applies when the individual's participation in the discriminatory conduct is active and intentional. Here, both Scott and Charles Creighton's actions meet and exceed this threshold.

Scott Creighton: As President, Scott Creighton failed to prevent the unauthorized disclosures of Plaintiff's private health information and actively contributed to the discriminatory and retaliatory environment.  In his deposition, Scott admitted to sending the July 23, 2019, email that disclosed Plaintiff's cancer diagnosis and acknowledged that it was sent after Plaintiff explicitly instructed him not to disclose the diagnosis until he had developed a contingency plan (Plan B).  Scott further admitted, "I believe I did [send the email]." When asked if he would have handled the disclosure differently knowing the consequences, he responded, "Yes…So I would not be here today" (Scott Creighton Deposition, Page 130, ¶12; Page 131, ¶10).  His testimony underscores both his awareness of the impropriety of his actions and his acknowledgment that they were mishandled.

Charles Creighton: Charles Creighton actively facilitated the unauthorized dissemination of Plaintiff's medical information, including sending the August 16, 2019, email to over 600 employees.  This email explicitly disclosed Plaintiff's cancer diagnosis, violating Plaintiff's clear instructions to maintain confidentiality.  When questioned in his deposition, Charles admitted to disregarding Plaintiff's explicit directive, justifying his actions with the statement, "We did not think it was necessary to get permission" (Charles Creighton Deposition, Page 20, ¶3).  He defended his actions by claiming, "We're like a big family," as a rationale for disclosing Plaintiff's

sensitive health information.  However, when asked whether the vendors and external recipients of the emails were employees or subsidiaries of Colony Tire, he conceded that they were not, undermining his "family" justification (Charles Creighton Deposition, Page 21, ¶6).

Additionally, Charles emphasized his habitual disregard for employee privacy by asserting, "That's how we do things" (Charles Creighton Deposition, Page 123, ¶5).  Charles also acknowledged that he coordinated with Scott Creighton in deciding to terminate Plaintiff's employment, further illustrating his active participation in and approval of the discriminatory and retaliatory conduct.  His role was central to perpetuating an environment where privacy violations and retaliatory actions were normalized, directly contributing to the harm Plaintiff suffered.

Their direct involvement in disseminating private medical information, ignoring Plaintiff's accommodation requests, and retaliating against him for asserting his rights leaves no doubt that Scott and Charles Creighton substantially assisted the principal violations, meeting the standard for aiding and abetting liability under NJLAD.

### d.  **DEFENDANT'S ARGUMENT IGNORES CRUCIAL EVIDENCE**

Defendants' argument disregards the significant evidence tying Scott and Charles Creighton to the discriminatory, retaliatory, and invasive actions taken against Plaintiff:

<u>Direct Admissions</u>: Deposition testimony reveals that Charles Creighton admitted to sharing Plaintiff's medical information without consent, stating, "We did not think it was necessary to get permission" (Charles Creighton Deposition, Page 20, ¶3).  Further, he justified his actions by claiming, "We're like a big family," while simultaneously acknowledging that many of the recipients of his emails were external vendors and not employees or subsidiaries, which directly undermines his justification (Charles Creighton Deposition, Page 21, ¶6).  Scott Creighton also admitted to sending the July 23, 2019, email disclosing Plaintiff's cancer diagnosis and acknowledged that he could have handled the situation differently, stating, "I would not be here today" if he had refrained from sending it (Scott Creighton Deposition, Page 130, ¶12; Page 131, ¶10).

<u>Coordinated Actions</u>: Emails and internal communications demonstrate a deliberate and coordinated effort between Scott and Charles Creighton to disseminate Plaintiff's sensitive medical information and retaliate against him for objecting to the disclosures.  For example, Scott Creighton admitted to receiving and reading Charles Creighton's unauthorized emails but failed to take corrective action, further facilitating the violations (Scott Creighton Deposition, Page 22, ¶5).

Charles Creighton's coordination with Scott in the decision to demote and later terminate Plaintiff solidifies their joint effort to retaliate against him for asserting his rights under NJLAD.

Harm to Plaintiff: The Creightons' actions directly resulted in significant harm to the Plaintiff, including emotional distress, reputational damage, and financial losses. The unauthorized disclosures of the Plaintiff's private medical information humiliated him within the professional community, while their retaliatory conduct led to his wrongful termination. These harms are compensable under NJLAD, as established in *Tynan v. Vicinage 13 of Superior Ct.*, 351 N.J. Super. 385, 402 (App. Div. 2002), and illustrate the severe impact of the Creightons' misconduct.

### e. PLAINTIFF'S CLAIMS ARE LEGALLY AND FACTUALLY SUPPORTED

The Plaintiff's claims for aiding and abetting under NJLAD are grounded in law and fact. The record clearly demonstrates that Scott and Charles Creighton knowingly and substantially assisted in discriminatory and retaliatory acts, satisfying the standard for aiding and abetting liability. For these reasons, Plaintiff has established a prima facie case of aiding and abetting under NJLAD. Defendant's arguments to the contrary are unsupported by the record or applicable law. Plaintiff respectfully requests that the Court grant his Motion for Summary Judgment on this claim.

## VII.    CONCLUSION

Plaintiff's Motion for Summary Judgment is fully supported by an overwhelming evidentiary record and well-established legal precedent. Defendants have failed to provide substantive evidence to create a genuine issue of material fact or rebut Plaintiff's claims under the New Jersey Law Against Discrimination (NJLAD) and related statutes.

Plaintiff has demonstrated:

1. Disability Discrimination: Defendants' refusal to provide reasonable accommodations and engage in the interactive process constitutes a clear violation of NJLAD, as established in *Victor v. State*, 203 N.J. 383, 409 (2010).

2. Retaliation: The temporal proximity between Plaintiff's protected activity and his termination, along with the pretextual reasons for his dismissal, further establishes a retaliation claim. See *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 550 (App. Div. 1995).

3.  Invasion of Privacy: Defendants repeated unauthorized disclosures of Plaintiff's medical information violated his privacy rights under New Jersey law, as held in *Smith v. Datla*, 164 A.3d 1110, 1123 (N.J. Super. App. Div. 2017).

Defendants' arguments fail to raise any substantive legal or factual disputes and instead rely on unsupported assertions that are directly contradicted by the record.  Plaintiff has satisfied the burden under *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), by demonstrating that no genuine issues of material fact remain and that judgment as a matter of law is warranted.

Accordingly, the Plaintiff respectfully requests that this Court grant his Motion for Summary Judgment in its entirety and hold the Defendants liable for their unlawful actions under NJLAD and other applicable laws.

Respectfully submitted,

Date: January 27, 2025

*/s/Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC
90 Broad Street, 2nd Floor
New York, NY 10004